1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RALPH HOWARD BLAKELY,

                              Plaintiff,

          v.

STATE OF WASHINGTON, *et al.*,

                              Defendants.

Case No. C21-5192-JLR-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION AND SUMMARY CONCLUSION

This is a *pro se* civil rights action proceeding under 42 U.S.C. § 1983. Plaintiff Ralph Blakely is a Washington prisoner who is currently confined at the Washington State Penitentiary ("WSP") in Walla Walla, Washington. He has been granted leave to proceed with this action *in forma pauperis*. Service has not been ordered. This Court, having reviewed Plaintiff's amended complaint, and the balance of the record, concludes that Plaintiff has not stated a cognizable claim for relief in this action. The Court therefore recommends that Plaintiff's amended complaint and this action be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

REPORT AND RECOMMENDATION
PAGE - 1

## II.    DISCUSSION

### A.    Plaintiff's Original Complaint

In March 2021, Plaintiff submitted to the Court for filing a civil rights complaint in which he alleged that the Washington Department of Corrections ("DOC") has been deliberately indifferent to his needs for adequate medical and dental treatment during his many years in custody, causing him severe pain and prolonged suffering. (Dkt. # 9 at 4.) Plaintiff further alleged that Washington Governor Jay Inslee failed to correct a "miscarriage of justice" when he declined to grant Plaintiff relief from his twenty-two years of improper imprisonment despite Plaintiff having filed multiple "Petitions for Reprieve, Commutation, or Pardon." (*Id.*) Plaintiff also alleged that DOC Secretary Stephen Sinclair improperly denied multiple petitions for extraordinary medical release, and that employees under his supervision displayed deliberate indifference to Plaintiff's well-being by allowing a retaliatory transfer that resulted in Plaintiff being beaten by another inmate. (*Id.* at 4-5.) Finally, Plaintiff alleged that he was discriminated against when he was denied knee replacement surgery while another inmate of the same age had both knee joints replaced, and when he received a disproportionate sentence for his crimes of conviction. (*Id.* at 6.) Plaintiff identified the State of Washington, Governor Jay Inslee, and DOC Secretary Stephen Sinclair as Defendants in his complaint. (*Id.* at 1, 4.) Plaintiff requested an immediate order of release from confinement and damages. (*Id.* at 7.)

After reviewing Plaintiff's complaint, this Court concluded that Plaintiff had not stated any viable claim for relief in his pleading. The Court therefore issued an Order declining to serve Plaintiff's complaint and granting him leave to file an amended complaint correcting a number of specified deficiencies. (Dkt. # 10.) The Court explained therein that in order to state a claim for

REPORT AND RECOMMENDATION
PAGE - 2

relief under § 1983, a plaintiff must show (1) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) that the violation was proximately caused by a person acting under color of state law. (*Id*. at 4 (citing *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991)).) The Court further explained that in order to satisfy the second prong a plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. (*Id*. (citing *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981)).)

The Court also explained that a defendant cannot be held liable in an action brought under § 1983 solely on the basis of supervisory responsibility or position, (*id*. at 6 (citing *Monell v. Department of Social Servs., of City of New York*, 436 U.S. 658, 691–94 (1978))), and that in order for a supervisor to be held liable for constitutional violations of his subordinates he must have "participated in or directed the violations or knew of the violations and failed to act to prevent them," (*id*. (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989))).

The Court went on to identify for Plaintiff the various deficiencies in his pleading. The Court first advised Plaintiff that any intended claims against the State of Washington or the DOC were barred under the Eleventh Amendment. (*Id*. at 4-5 (citing *Regents of the University of California v. Doe*, 519 U.S. 425, 429-31 (1997)).) The Court next advised Plaintiff that any challenges to the Governor's discretionary decisions to grant or deny relief in accordance with his pardon power did not implicate federal constitutional concerns and therefore did not provide any basis for relief under § 1983. (*Id*. at 5.) The Court also noted that, to the extent Plaintiff was attempting to use this civil rights action to obtain release from confinement, he had chosen the incorrect vehicle as a writ of habeas corpus is the sole federal remedy available where a prisoner

REPORT AND RECOMMENDATION
PAGE - 3

challenges the fact or duration of his confinement. (*Id.* (citing *Preiser v. Rodriguez*, 411 U.S. 475, 489-90 (1973)).)

Finally, with respect to the claims asserted against Secretary Sinclair, the Court advised Plaintiff that to the extent he was complaining about the Secretary's discretionary decisions to deny his requests for extraordinary medical release, the decisions did not implicate federal constitutional concerns and therefore did not provide any basis for relief under § 1983. (*Id.* at 6.) The Court further advised that to the extent Plaintiff intended to claim the Secretary failed to properly supervise DOC employees, he had likewise stated no viable claim for relief because a defendant cannot be held liable in an action brought under § 1983 solely on the basis of supervisory responsibility or position. (*Id.* (citing *Monell*, 436 U.S. at 691–94).)

**B.  Plaintiff's Amended Complaint**

In May 2021, Plaintiff filed an amended complaint in response to the Court's Order declining to serve his original complaint. (Dkt. # 13.) Plaintiff alleges therein claims similar to, or related to, the claims alleged in his original complaint. (*See id.*) However, Plaintiff identifies a completely new slate of Defendants in his amended complaint, including Deputy Director of Prisons Tomas Fithian, WSP Custody Unit Supervisor ("CUS") Brad Bowman, Washington Extraordinary Medical Placement Coordinator ("EMP") Beth Lindenman, and WSP Property Officer Fernando Carranza. (*Id.* at 1, 3, 9.) Plaintiff once again requests an order of immediate release from prison and damages. (*Id.* at 10.) And, Plaintiff once again fails to adequately allege any viable claim for relief.

REPORT AND RECOMMENDATION
PAGE - 4

1          *1.     Deputy Director of Prisons Tomas Fithian*

2          Plaintiff alleges in the first count of his amended complaint that Mr. Fithian violated his

3   First and Eighth Amendment rights when he granted retaliatory transfers and when he delayed

4   and/or denied medical and dental care. (*Id*. at 4.) Plaintiff goes on to assert that Mr. Fithian, as a

5   subordinate of the Secretary of the DOC and the Assistant Secretary of the DOC, had a duty to

6   remedy this alleged official misconduct. (*Id*. at 5.) With respect to the alleged retaliatory

7   transfers, Plaintiff claims that Mr. Fithian has, on many occasions, personally participated in,

8   acquiesced in, and/or granted "subordinate" retaliatory transfers of Plaintiff to closed custody at

9   WSP, causing Plaintiff to be separated from his expert medical treatment. (*Id*.) Plaintiff also

10  references a transfer which he asserts was granted by Mr. Fithian in March 2020 after which

11  Plaintiff claims he was assaulted by a fellow inmate and sustained serious injuries. (*Id*.)

12         With respect to the issue of medical care, Plaintiff appears to assert that Mr. Fithian had

13  access to his DOC records which, Plaintiff suggests, reveal a history of deliberate indifference to

14  his health and safety by medical and corrections staff. (*Id*.) Finally, Plaintiff asserts that Mr.

15  Fithian knew of and disregarded an excessive risk to Plaintiff's safe placement in relation to an

16  inmate assault in 2007. (*Id*.)

17         Plaintiff's claims lack sufficient clarity and specificity to demonstrate that Mr. Fithian

18  personally participated in, or acquiesced in, any violation of Plaintiff's federal constitutional

19  rights. Plaintiff's materials make clear that Mr. Fithian is a member of the DOC headquarters

20  staff whom, it appears, was occasionally tasked with responding to complaints Plaintiff directed

21  to DOC headquarters. (*See* Dkt. # 13-1 at 15-16.) Plaintiff's assertions that Mr. Fithian bears

22  responsibility for the transfers he complains of, or for the alleged inadequacy of the medical care

23
REPORT AND RECOMMENDATION
PAGE - 5

afforded Plaintiff during his time in DOC custody, are vague and conclusory and therefore insufficient to state a viable claim for relief.

### 2. *Custody Unit Supervisor Brad Bowman*

Plaintiff alleges in the second count of his amended complaint that CUS Bowman violated his Eighth Amendment rights when he personally participated in, acquiesced in, and/or allowed subordinate staff to place a dangerous inmate in the same unit as Plaintiff and other disabled and less violent inmates. (Dkt. # 13 at 6.) Plaintiff claims that he was assaulted by this dangerous inmate in April 2020 in front of six subordinate staff members of CUS Bowman, and that he suffered serious injuries as a result. (*Id*.) Plaintiff suggests that CUS Bowman should have known from the other inmate's institutional record that placing him in the "handicap" section of the unit created an excessive risk to Plaintiff's safety. (*Id*.) Plaintiff also asserts, in relation to his claim that CUS Bowman failed to protect him from a dangerous inmate, that the WSP medical staff has denied him adequate medical care for various conditions, apparently related to injuries he claims he suffered as a result of the assault. (*Id*. at 7.)

In order for a prisoner to establish an Eighth Amendment violation based on a prison official's alleged failure to protect him from harm, the prisoner must show that the prison official knew of, and disregarded, an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.

Plaintiff fails to allege sufficient facts to demonstrate that CUS Bowman was the individual responsible for placing the dangerous inmate in Plaintiff's living unit. Plaintiff also fails to allege facts to support his assertion that CUS Bowman knew that the individual was

REPORT AND RECOMMENDATION
PAGE - 6

1    dangerous or, in any event, that the individual posed a substantial risk of harm to Plaintiff.

2    Finally, Plaintiff fails to explain how, if at all, CUS Bowman is responsible for the alleged

3    deficiencies in the care provided by the WSP medical staff. Plaintiff thus fails to adequately

4    allege an Eighth Amendment claim against CUS Bowman in his amended complaint.

5                    3.        *Extraordinary Medical Placement Coordinator Beth Lindenman*

6            Plaintiff alleges in the third count of his amended complaint that EMP Coordinator

7    Lindenman had the duty, pursuant to the state statute governing release of offenders prior to the

8    expiration of their sentences, RCW 9.94A.728, to order his release from custody so that he could

9    obtain necessary medical and dental care. (Dkt. # 13 at 7-8.) The Court first notes that whether a

10   prisoner qualifies for release from a state sentence under a state statute is a matter of state law

11   and is therefore outside the scope of § 1983. Even assuming there was some constitutional

12   underpinning to Plaintiff's claim that he was entitled to, and improperly denied, an extraordinary

13   medical placement, the statute makes clear that it is the secretary of the DOC who may authorize

14   release when certain conditions are met. *See* RCW 9.94A.728(1)(c). While the attachments to

15   Plaintiff's complaint demonstrate that Ms. Lindenman is the individual apparently responsibility

16   for communicating with offenders about EMP requests and decisions, nothing in the record

17   suggests that she has any role in making the determinations. (*See* Dkt. # 13-1 at 21-23.)

18   Plaintiff's claim against EMP Coordinator Lindenman therefore fails.

19                   4.        *WSP Property Officer Fernando Carranza*

20           Plaintiff alleges in the fourth and final count of his amended complaint that Officer

21   Carranza and "associate officers" confiscated his legal documents in December 2020 and again

22   in April 2021 and thereby interfered with this legal action. (Dkt. # 13 at 9.) Plaintiff claims that

23
     REPORT AND RECOMMENDATION
     PAGE - 7

the actions of Defendant Carranza and his associate officers violated his right to access the courts and caused him great mental stress. (*Id.*)

Prisoners have a "fundamental constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). However, the Supreme Court has made clear that in order to adequately allege a cause of action for deprivation of the right of access to the courts, an inmate must demonstrate that he suffered some actual injury to his right of access. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). While Plaintiff asserts that the confiscated legal documents were necessary to support his claim of "painful suffering" (dkt. # 13 at 9), this assertion is too vague to demonstrate that Plaintiff suffered any actual injury to his right of access. Plaintiff also fails to set forth facts demonstrating that it was, in fact, Officer Carranza who confiscated his documents as opposed to one of the unnamed "associate officers." Plaintiff thus fails to adequately allege a cause of action against Officer Carranza relating the alleged confiscation of his legal documents.

### 5.    Summary

When a complaint is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief, the Court may dismiss an *in forma pauperis* complaint before service of process under 28 U.S.C. § 1915(e)(2)(B). Because Plaintiff fails to state any cognizable claim for relief in his amended complaint, the complaint and this action should be dismissed. The Court observes, however, that though Plaintiff's amended complaint is insufficient as to all named Defendants, it is conceivable Plaintiff could allege additional facts which would support his claims against CUS Bowman and Officer Carranza. If Plaintiff wishes to pursue such claims, he may do so by filing a new

REPORT AND RECOMMENDATION
PAGE - 8

complaint in the Eastern District of Washington given that his claims arose in that District and Defendants presumably reside in that District as well. *See* 28 U.S.C. § 1391(b).

### III.    CONCLUSION

Based on the foregoing, this Court recommends that Plaintiff's amended complaint and this action be dismissed under 28 U.S.C. § 1915(e)(2)(B) for failure to state a cognizable claim for relief under § 1983. The Court further recommends that this dismissal be with prejudice as to Tomas Fithian and Beth Lindenman, and without prejudice as to Brad Bowman and Fernando Carranza. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **August 13, 2021**.

DATED this 21st day of July, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 9